Louise S. Lee, Respondent, *v.* William Bailey Corporation et al., Defendants; Vicinus & Co., Inc., et al., Appellants, and Pennsylvania-Dixie Cement Corporation et al., Respondents.

(Argued March 13, 1935; decided April 16, 1935.)

*Leonard Lee Bacon* for Vicinus & Co., Inc., appellant.

*Walter J. Holloran* for Genesee Valley Trust Company, appellant.

*Walter S. Forsyth* for Robinson Clay Product Company of New York, appellant.

*George H. Rothlauf* for Pennsylvania-Dixie Cement Corporation, respondent.

LEHMAN, J. In June, 1930, the State of New York awarded to William Bailey Corporation a contract for the construction of a section of a public highway. The work was completed and accepted on September 16, 1931. The plaintiff filed a notice of lien on October 16, 1931. No other notices of lien and no assignments of the contract or of moneys due thereunder were filed within thirty days after the completion of the work. At that time a balance of $8,838.16 was still due from the State on the contract. The priority of the plaintiff's lien over all other claims upon this fund is undisputed. The dispute concerns only the manner in which the balance of this fund must be distributed. The contractor William Bailey Corporation has made a series of written assignments of moneys earned under its contract with the State. These assignments were executed and filed after the time in which liens may be filed had expired. They were given for indebtedness which had accrued before the assignments were made. The judgment granted at Special Term provides for a proportionate distribution upon all the assignments regardless of the time when the assignments were executed or filed. The Appellate Division modified the judgment and directed that the unpaid balance should be applied upon the assignments in the same order in which they were filed.

At common law a contractor could, by assignment of a contract or moneys earned thereunder, transfer to a third party a fund which was created through labor and mate-

rials furnished by subcontractors and from which such subcontractor expected to be paid. (*Bates* v. *Salt Springs Nat. Bank*, 157 N. Y. 322.) Claims upon the same fund derived from or through the contractor after such assignment could, of course, attach only to such interest in the fund as the contractor had retained. For the protection of those who might advance moneys or furnish labor and materials to a contractor upon the expectation or promise that payment would be made to them out of moneys earned by the contractor, the Lien Law (Cons. Laws, ch. 33) provides that an assignment of a contract for a public improvement must be " filed within twenty days after the date of such assignment of contract  *  *  * and such assignment  *  *  * shall have effect and be enforceable from the time of such filing, and no such assignment  *  *  * shall have any validity until the same shall have been so filed." (§ 16.) The statute was not intended to confer upon an assignee rights which the assignee did not have at common law. Rather it was intended to impose new conditions and limitations upon the assertion of common law rights. Under the terms of the statute, no right or title to a contract for a public improvement, or to moneys earned thereunder, passes to an assignee until the written assignment is filed, and then the assignee takes subject to any rights acquired by a lienor or other person before such filing, even though after the written assignment was made. In the absence of provision in the statute for some other order of distribution, the result, of course, is that the order of priority of rights of lienors and assignees is determined by the order of the filing of the liens and assignment.

By recent amendments to the Lien Law the Legislature has provided a more equable distribution of moneys earned upon a public contract. An assignee, by filing his assignment " prior to the filing of a notice of lien or assignment of every other party to the action " obtains

priority over liens or assignments filed thereafter only " to the extent of advances made upon such assignment before the filing of the notice of lien or assignment next subsequent to his assignment, but as to advances made subsequent to a notice of lien or assignment filed and unsatisfied such assignee for the purpose of determining his proportionate share of moneys available for distribution as provided in subdivision four of this section shall be treated as a lienor having a lien to the extent of advances so made." (§ 25, subd. 1.) In the same way an assignee " whose assignment is duly filed subsequent to the filing of the notice of lien or assignment of any other party shall for the purpose of determining his proportionate share of moneys available for distribution, as provided in subdivision four of this section be treated as a lienor having a lien to the extent of advances actually made upon such assignment prior to the filing thereof." (§ 25, subd. 2.) " Moneys available for distribution among lienors of any class shall be distributed *pro rata* in accordance with their respective valid liens." (§ 25, subd. 4.)

In terms, section 25 of the Lien Law applies only to " advances " made upon an assignment. A prior indebtedness secured by an assignment is not an advance upon an assignment. Quite clearly the Legislature intended that assignees should be treated as lienors either in priority to or in parity with other lienors only to the extent of moneys advanced by the assignee upon the assignment in order to enable the contractor to carry out his contract. To make that intent more effective, each assignment must contain a covenant by the assignor that he will receive any moneys advanced thereunder by the assignee as a trust fund to be applied to such purpose. (§ 25, subd. 5.) None of the assignees here can be treated as lienors, for their claims are based upon indebtedness accruing before any assignment was made, and not upon advances made upon their assignments, and they have

filed their assignments after the expiration of the time during which liens may be filed. Their rights are not created or defined by section 25, but are subordinate to the rights defined by that section.

For definition of the rights of these assignees to any balance remaining after liens and assignments under section 25 are satisfied, we must look to the other provisions of the statute or to the common law.

Concededly the contractor has no right to such balance after he has assigned all moneys due under his contract to these assignees. They or some of them must stand in his place, and they stand in his place in the order in which their assignments became valid, in accordance with section 16; that is, in the order in which they were filed. Assignments of moneys made after the assignor had already effectively assigned all the money earned under the contract, can pass nothing to the assignees.

The Appellate Division so held, and the judgment entered upon its decision so provides. Under that judgment the first two assignees receive payment of their claims in full instead of *pro rata* with the other assignees. Miller-Grey, Inc., the second assignee, failed, however, to appeal from the judgment of Special Term, and that judgment cannot be increased in its favor. It has not appeared upon this appeal to defend the increased judgment.

The judgment should be modified to the extent that the amount payable to Miller-Grey, Inc., is reduced to the amount in the original judgment, and as modified affirmed with costs to the respondent Pennsylvania-Dixie Cement Corporation.

CRANE, Ch. J., O'BRIEN, HUBBS, CROUCH, LOUGHRAN and FINCH, JJ., concur.

Judgment accordingly.